Appeal of Peter L. and German A. Kimberly, Appeal of The Tradesmen's National Bank, Appeal of National Bank of Lawrence County in Joel Taylor et Ux., *v.* D. B. Kurtz, Trustee.

Upon the dissolution of a firm by the retirement of some of its members, a creditor may, by express agreement or conduct indicating such agreement, such as giving up the note of the old firm and taking the note of the new firm with additional security, release the retiring partner from liability for debts of the old firm.

The onus to show that a new note is taken as a substitute for and in discharge of a joint debt is thrown upon the joint debtor who claims it, and such proof may be contradicted. It is a question of intention.

One may release or destroy his right to pursue a debtor personally, and yet have a right to enforce his claim under a mortgage given to secure it.

If a note secured by mortgage be renewed or otherwise changed the lien continues until the debt is paid; change in the form of the instrument is immaterial.

(Decided November 1, 1886.)

Argued Oct. 11, 1886, before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ., October Term 1886, Nos. 8, 205, 213, W. D. Certiorari to the Common Pleas of Lawrence County to review proceedings on the distribution of funds arising from the sale of real estate of Reis Brothers on a levari facias sur mortgage. Affirmed.

The facts are fully stated in the following opinion of the court below by STOWE, J., on the hearing on exceptions of the National Bank of Lawrence county and the Tradesmens National Bank of Pittsburgh to the report of the auditor which distributed the entire fund to P. L. & G. A. Kimberly:

"The facts found by the auditor, and which we think shown by the evidence, are as follows:

"The property sold by the sheriff, and the proceeds of which are now for distribution, was, November 29, 1872, sold by Lucinda Taylor to D. B. Kurtz in trust for several persons named in the deed, who afterwards were incorporated as the New Cas-

---

NOTE.—For release of members of the old firm by accepting an obligation of the new firm, see note to Hawk v. Johnston, *ante*, 511.

tle Iron Company. D. B. Kurtz, trustee, executed a mortgage to Mrs. Taylor to secure purchase money. It was under this mortgage sale was had. After the organization of the New Castle Iron Company (August 13, 1873), D. B. Kurtz, trustee, and the several *cestuis que trust* conveyed said real estate to the 'New Castle Iron Company,' subject to the mortgage given Mrs. Taylor. December 15, 1873, the New Castle Iron Company executed a mortgage of said real estate to D. M. Courtney, trustee, to secure the payment of 120 bonds of $500 each, which were issued by the said New Castle Iron Company for the purpose of creating a loan of $60,000. This was recorded December 17, 1873. February 2, 1874, forty of these bonds were deposited by the New Castle Iron Company in the National Bank of Lawrence County 'as collateral security for any and all advancements, loans, or discounts made to or for said iron company by said bank.'

"These bonds are still in the custody and possession of the bank, and under them it claims a portion of the fund to be distributed.

"Thirty other bonds were, before July, 1875, deposited by the New Castle Iron Company in the bank of William Patterson, of New Castle, as collateral for loans made by him to the company, but which were afterwards taken up and deposited with the Tradesmen's National Bank of Pittsburgh, and are the basis of their claim for distribution.

"July 19, 1875, John S. Bradley, Peter L. Kimberly, German A. Kimberly, George L. Reis, and W. E. Reis by a parol agreement formed a copartnership for the purpose of manufacturing iron, etc., and the same day purchased all the stock of the New Castle Iron Company, and agreed with the former stockholders to pay all the debts and liabilities of the corporation. This copartnership did its business in the name of Bradley, Reis & Company.

"After this no directors were ever elected for the New Castle Iron Company, and no further business done in the name of the corporation. Bradley, Reis & Company took all its property and treated it as firm property, as though the corporation had ceased to exist. The New Castle Iron Company was indebted to Patterson's Bank and to the National Bank of Lawrence County, for the payment of which indebtedness the said bonds were held as collateral. As the notes matured they were taken up by

Bradley, Reis & Company, and new notes discounted and an account opened by the firm with the bank in its own name. The bonds held by the National Bank of Lawrence County were, by written agreement made by Bradley, Reis & Company on the back of the receipt, and agreement of the cashier of the bank with the secretary of the New Castle Iron Company, agreed to be held by said bank as stipulated in the receipt, and also as collateral security for any and all advancements, discounts, and loans made, or to be made, by said bank to or for Bradley, Reis & Company.

"At the time of the dissolution of Bradley, Reis & Company, September 15, 1881, besides the paper indorsed by the firm and discounted by the bank, *viz.*, $————, the firm owed the bank $7,000 for money borrowed on its own note, which was dated May 29, 1881, at four months, and was a renewal of a similar note dated May 18, 1880.

"The thirty bonds originally placed with Patterson's Bank and held by it as collateral security for loans and discounts, first, to the New Castle Iron Company, and afterwards to Bradley, Reis & Company, remained there until November 14, 1879, when Bradley, Reis & Company negotiated a loan of $15,000 with the Tradesmen's National Bank of Pittsburgh, for which the firm gave three notes of $5,000 each, due in three, six, and nine months. Of this money, $6,850 was applied to paying the indebtedness of Patterson's Bank, and the balance to paying obligations due by the firm to the Tradesmen's National Bank.

"Patterson having been thus paid in full, the thirty bonds in his hands were delivered to Bradley, Reis & Company and by them deposited with the Tradesmen's National Bank as collateral for the payment of the three notes, or the loan of $15,000, without regard to the time it should be carried by the bank, the understanding being that they should remain as security for the loan until it was paid.

"When these three notes became due they were each renewed from time to time by Bradley, Reis & Company, and the thirty bonds remained in the bank without anything being said about them after they were first left there.

"September 15, 1881, Bradley, Reis & Company dissolved, by Bradley selling all his interest to his copartners, who continued the business in the name of Reis Brothers & Company, and who agreed to pay all the debts of Bradley, Reis & Company. When

the notes of Bradley, Reis & Company became due, they were taken up and renewed by Reis Brothers & Company giving their notes to the respective banks for the same amounts, and renewing them every four months, as Bradley, Reis & Company had done.

"The three notes for $5,000 each were continued by successive renewals in the Tradesmen's National Bank during the existence of the firm of Bradley, Reis & Company, the thirty bonds remaining in the bank and both parties treating them as collateral for the several notes and their renewals.

"There was, also, a verbal agreement between the National Bank of Lawrence County and Reis Brothers & Company that the forty bonds in that bank should be held for any and all advancements, discounts, and loans made, or to be made, by said bank to or for Reis Brothers & Company, which amounted to $15,000 on the first of May, 1882, when Reis Brothers & Company was dissolved by Peter L. Kimberly and G. A. Kimberly selling all their interest in the property and assets of the firm to their copartners, George L. Reis and William E. Reis, who continued the business as Reis Brothers.

"At the time of the dissolution of the firms of Bradley, Reis & Company and Reis Brothers & Company, deeds were made by the retiring members to the ones who formed the succeeding firms for all their interest in the real estate (the same sold by the sheriff in this case), and each of said deeds containing covenants by the grantees to pay all existing liabilities and to indemnify the grantor against their payment.

"When George L. and William E. Reis purchased the interest of the Kimberlys in the partnership and real estate, they executed a mortgage for $100,000 to secure twelve promissory notes given for the purchase money, which was duly recorded. $40,-000 have been paid, and there now remains of the notes unpaid $60,000, with interest. At the date of this transaction Reis Brothers & Company owed the National Bank of Lawrence County some $15,500 on three notes, and the Tradesmen's National Bank three notes for $5,000 each, viz., $15,000, for which they claimed to hold the bonds deposited with them as collateral.

"All these notes held by the two banks at the dissolution of Reis Brothers & Company were taken up as they became due by Reis Brothers, who gave instead their own notes signed Reis Brothers, and these notes were taken up and renewed from

time to time, and the last note of each series of renewals is now held by the respective banks with one exception, *viz.:* the note for $5,000, dated December 29, 1881, signed Reis Brothers & Company, payable to their order and indorsed Reis Brothers & Company, at four months, and held by the Tradesmen's National Bank, becoming due May 2, 1882. When this became due, May 2, 1882, it was taken up by Reis Brothers giving a similar note, signed and indorsed Reis Brothers, and this was again renewed by their note in similar form, which was paid by them at its maturity, January 8, 1883. The other two notes were regularly renewed as before stated. And August 31, 1883, Reis Brothers got the note discounted for $5,000, which has not been paid and on which the bank also claims it is entitled to distribution.

"It appears from the foregoing facts that, with the exception of the note for $5,000, owing by Reis Brothers & Company to the Tradesmen's National Bank, and paid by Reis Brothers January 8, 1883, as above stated, none of the notes due either bank by Reis Brothers & Company, and for which the Kimberlys were personally liable at the dissolution of that firm, have been actually paid by anybody, and the debts represented by them still exist. But it is said that because said notes were taken up by the new firm of Reis Brothers as they matured, and marked paid by the banks and duly canceled, and new notes signed by Reis Brothers discounted, the proceeds of which paid these notes, this operated as a payment of them by way of novation, and that hereby Reis Brothers were substituted for Reis Brothers & Company, and the latter released not only from personal liability on the original notes, but that the debt is absolutely extinguished, so that the banks have no claim for payment even under the bonds held by them as collateral for the payment of the debts. It is this question we are now to consider.

"It is undoubtedly true that upon the dissolution of a firm by the retirement of some of its members, a creditor may, by express agreement or by acts and conduct indicating such an understanding, release the retiring partner from liability from debts of the old firm; and while it has been said in general terms, as the result of the authorities, that if the creditor gives up the securities of the old firm and takes those of the new for the old debt, receiving in consideration thereof additional interest or a new security, the retiring partner is released. See Story, Partn. § 156.

"All the cases turn upon the same general consideration, whether there has been a new and exclusive credit given to the new firm in extinguishment of the debt. Story, Partn. § 159, note 1.

"Where a joint debtor insists that a separate note is substituted and is in satisfaction of the joint debt, the onus is thrown upon him; and to discharge himself from liability, it will be necessary to show a special contract to that effect; or that in addition to a separate note being taken for the amount of the debt, the original bills were given up. And even when that is the case it may be rebutted by countervailing proof that it was otherwise intended. Davis's Estate, 5 Whart. 538, 34 Am. Dec. 574.

"The real question turns upon the intention to substitute the new for the old. Mason v. Wickersham, 4 Watts & S. 100; 49 Pa. 65, 83.

"It is clear in this case that the banks made no agreement, and had no intention to release the collateral held by them from their claim to hold them as security for the payment of the notes of Reis Brothers & Company and their subsequent renewals. Whatever the legal effect of their acts was, they never intended to lose, nor suspected that they were losing, their hold upon the bonds upon the strength and assurance of which all these loans and discounts were made.

"Can it be, then, that without intending to do so, and where the facts show clearly a contrary intent and understanding, they will be held to have lost their claim to those bonds? I cannot so think.

"It seems to me such a conclusion would be inequitable as against parties who had credited the firm of Reis Brothers, in entire ignorance of the transactions with the banks, and most clearly so in a case like the present, where the adverse claimant was a party originally a debtor, claiming preference out of the very property pledged for the payment of his own debt.

"It may be that in treating the notes of Reis Brothers & Company as paid, and delivering them up to Reis Brothers and renewing the notes of Reis Brothers from time to time, the auditor was justified in holding the personal liability of the Kimberlys as extinguished (though I am not clear that such is a necessary conclusion), but I cannot see that it by any means follows that the banks have also lost their right to claim payment of their debts under the collateral. It may very well be that one may

release or destroy his right to pursue a debtor personally on a bond, and yet have a perfect right to enforce his claim under a mortgage given to secure it.

"Looking at the case then in this light, I think the facts found by the auditor show that even if the Kimberlys are released from personal liability on the notes held by the bank, he erred in finding that the debt was paid so as to work an extinguishment of it, and thus destroy the bank's right to claim payment under the bond and mortgage.

"The right to compel payment of a debt secured by a pledge or mortgage does not depend upon the 'personnel' of the debtor, but the identity of the debts.

"The renewal of a negotiable bill or note representing the principal indebtedness, for the payment of which collateral securities have been deposited, does not affect the right of the creditor to retain or compel collections. In Cover v. Black, 1 Pa. St. 493, GIBSON, Ch. J., says: 'A mere change of the evidences of the debt would not discharge the mortgage *pro tanto* in favor of the mortgagor, or any one claiming on the foundation of his title and standing in no peculiar equity.'

"So in Jones v. New York Guaranty & Indemnity Co. 101 U. S. 630, 25 L. ed. 1035, if a note secured by a mortgage be renewed or otherwise changed, the lien continues until the debt is paid; change in the form of the instrument is immaterial. See also Shrewsbury Sav. Inst.'s Appeal, 94 Pa. 312. And Brinckerhoff v. Lansing, 4 Johns. Ch. 75, 8 Am. Dec. 538, where Chancellor KENT says, in a case where the notes were changed in amount: 'The identity of the debt remained so as to preserve the relation between that and the pledge.'

"The debts to be secured to the banks were owing and evidenced by the notes of Reis Brothers & Company, and (with the exception of the $5,000 note in the Tradesmen's National Bank) are unpaid today. They are clearly identified as the same for which Reis Brothers & Company were liable, and for which the bonds could unquestionably be held; and for the sums on such notes I think the banks are entitled to distribution in preference to the Kimberly mortgage; but I do not think they are entitled to distribution for any notes or bills discounted for Reis Brothers or for their benefit, not given by way of renewals for debts due by Reis Brothers & Company.

"Without laying any stress upon the insufficiency of the evi-

dence to show any specific arrangement that the bonds were held as security for new debts of Reis Brothers, it seems to me 'that the recording of the deed of the Kimberlys to the Reis Brothers for the partnership property, *inter alia* the land covered by the New Castle Iron Company mortgage, and the recording of the mortgage given by the Reis Brothers to secure payment of the purchase money, must be taken as legal notice to the banks so far as advancements to Reis Brothers are concerned.'

"The banks knew the bonds were originally the property of the New Castle Iron Company, held as collateral for its debt, and common prudence required them, when they afterwards accepted them as collateral for loans to Reis Brothers & Company, to inform themselves by what authority they were so used. This would have informed them of the whole transaction from the beginning. All this it was their duty to discover, and undoubtedly they did know it. And in a like way, when Reis Brothers undertook to use them (if they ever did) as collateral for new loans of their own, it was the duty of the banks to inquire by what authority that firm undertook to use the bonds of Reis Brothers & Company for their individual benefit, which would necessarily have developed the sale to Reis Brothers and their mortgage for the purchase money to the Kimberlys.

"In accordance with these views it is now ordered that distribution of the fund in court be made as follows:

Amount in court for distribution .... $48,263 65
Deduct auditor's fees, etc., as per auditor's report .................. 392 81

Balance for distribution ............ $47,870 84
To. National Bank of Lawrence County:
Note of Reis Brothers at four months, dated October 16, 1883, due February 19, 1884, after sheriff's sale.... $7,000 00
Note same at four months, dated October 24, 1883, due February 27, 1884, after sheriff's sale ......... 4,500 00
Note same at four months, dated October 30, 1883, due March 2, 1884... 4,000 00
———————— 15,500 00.

To Tradesmen's National Bank of
  Pittsburgh:

| | | |
|---|---:|---:|
| Note Reis Brothers, due November 17, 1883 .................... | 5,000 00 | |
| Interest to sheriff's sale ............ | 50 00 | |
| Protest fees .................... | 1 56 | |
| | | 5,051 56 |
| Note Reis Brothers, due February 16, 1884 (no interest) ............. | 5,000 00 | |
| Protest fees .................... | 1 56 | |
| | | 5,001 56 |
| Total distribution to banks ......... | | $25,553 12 |
| Balance to notes secured by Kimberly mortgage ..................... | | 22,317 72 |
| | | $47,870 84" |

A decree was accordingly entered and separate appeals taken by P. L. & G. A. Kimberly, the Tradesmen's National Bank of Pittsburgh, and the National Bank of Lawrence County.

The appellants P. L. & G. A. Kimberly assigned as error the action of the court:

1. In overruling the finding the the auditor and in awarding the sum of $15,500 to the National Bank of Lawrence County out of the fund in the court, on the three notes of Reis Brothers for that sum, given by said firm to said bank.

2. In overruling the finding of the auditor and in awarding the sum of $10,000 out of the fund in court to the Tradesmen's National Bank of Pittsburgh on the two notes of Reis Brothers for that sum, given by said firm to said bank.

3. In not confirming the report of the auditor awarding the entire fund to P. L. & G. A. Kimberly on their notes secured by the mortgage of May 1, 1882.

*Samuel Griffith & Sons, S .W. Dana,* and *J. N. McClure,* for appellants.—The legal effect of the payment of the notes by Reis Brothers in the manner found by the court, was an actual payment of the notes and an extinguishment of the debt—a novation as far as the Kimberlys were concerned. Slaymaker v. Gundacker, 10 Serg. & R. 75; Ayres v. Wattson, 57 Pa. 360;

Mitchell v. Coombs, 96 Pa. 430; Moorehead v. Duncan, 82 Pa. 488.

Nothing short of a bona fide payment in money, or other thing, so as to extinguish the original debt, and a subsequent loan on independent securities, will make the new security valid or protect it against the charge of usury. Campbell v. Sloan, 62 Pa. 481; Macungie Sav. Bank v. Hottenstein, 89 Pa. 328; Shafer's Appeal, 99 Pa. 246.

As to the six notes held by these two banks against the firm of Reis Brothers & Company, on May 1, 1882, Reis Brothers were the principal debtors, and the Kimberlys sureties thereon as between themselves, and these banks were at their peril legally bound to observe these rights and protect the sureties. Baylies, Sureties & Guarantors, 491; Savage v. Putnam, 32 N. Y. 501; Millerd v. Thorn, 56 N. Y. 402; Morss v. Gleason, 64 N. Y. 204.

Where the question is between all the parties to a transaction, and no others are to be affected thereby, payment is a question of intention and, although not directly provable, is to be inferred from all that has been proven; and the presumption is in favor of the conclusion reached by the auditor, and his finding will not be reversed unless clearly erroneous. Stehman's Appeal, 5 Pa. 413; Miller's Appeal, 30 Pa. 478; Gilbert's Appeal, 78 Pa. 266.

On the effect of recording the Kimberly deed and mortgage, see Jaques v. Weeks, 7 Watts, 267; Levinz v. Will, 1 Dall. 433, 1 L. ed. 209; and Stephen's Appeal, 87 Pa. 202.

The intention or purpose of the banks and the Reis Brothers, with reference to the collateral bonds as security for the loans made to Reis Brothers, is not an element in this contention, for that would be to admit the principle that one man might lose his rights, his security, or debt because of the purpose or intention of others. Bank of Commerce's Appeal, 44 Pa. 423.

The authorities cited by the court below are not consistent with this position.

If no person had any interest in this contention except the banks and Reis Brothers, then we would concede that their intention or purpose might control the question; but that intention cannot avail to affect or prejudice the rights.

Cover v. Black, 1 Pa. St. 493, does not militate against our position in the least; it merely decides that a judgment creditor

is not a purchaser of an interest in his debtor's land, has no equity greater than he.

Jones v. New York Guaranty & Indemnity Co. 101 U. S. 622, 25 L. ed. 1030, was a contention between the original parties to a paper, and the rights of no purchaser or mortgagor were involved.

Shrewsbury Sav. Inst.'s Appeal, 94 Pa. 312, only decides that subsequent judgment creditors were bound by the acts of the debtor, that they had no higher equity than he.

PER CURIAM:

The decree in this case is affirmed on the opinion of the learned judge of the court of common pleas, and the several appeals are dismissed at the costs of the appellants.